709 A.2d 373

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Dwayne E. HAWK, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 15, 1997.

Decided Feb. 26, 1998.

Phyllis A. Jin, Uniontown, Michael J. Savona, Bronsville, for Dwyane E. Hawk.

Peter U. Hook, Stephen P. Leskinen, Uniontown, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

NEWMAN, Justice.

Dwayne E. Hawk (Hawk) appeals from the Superior Court's affirmance of the judgment of sentence entered against him in the Court of Common Pleas of Fayette County (trial court), following his conviction for rape. We granted allowance of appeal to determine whether the trial court erred in disallowing the defense to present the testimony of a forensic scientist concerning the negative test results of a rape kit administered to the alleged victim.[1] Because we conclude that the trial court abused its discretion in precluding the scientist's testimony, we reverse.

### Factual Background

At trial, the victim testified that on the night of August 1, 1993, she was at a bar in Uniontown, Pennsylvania at approximately 11:15 or 11:30 p.m. Hawk sat next to her at the bar and attempted to engage her in conversation. She became irritated by Hawk and moved away. Hawk did not attempt any further conversation with her in the bar. At approximately 12:15 a.m., the victim left the bar with a glass of soda in her hand and began walking to her home two blocks away. While she was opening her front door, she heard someone behind her say, "ho." She shut the door and turned around. She saw Hawk at the foot of the steps. He grabbed her around the waist before she could reopen the door. Hawk sat her on the step and put his arm around her and would not let her go.

---

1. A "rape kit" is a product frequently used for the examination of sexual assault victims in which blood, hair, saliva, semen, fibers, and other substances are collected from the victim's body and clothing and retained for further forensic examination. *United States v. Boyles*, 57 F.3d 535, n. 2 (7th Cir.1995).

Hawk and the victim then engaged in a brief conversation in which he told her that he liked her. She responded that her boyfriend was upstairs, and that Hawk should leave. When he said he wanted to buy a can of soda from a gas station next door, the victim stated she was going upstairs. According to the victim, Hawk insisted that she come with him because he had a "silencer." She understood a "silencer" to mean a gun.

Hawk took her by the arm and eventually led her down an alley. The victim testified that Hawk sat her on the steps of a building and pulled down her pants. He then pulled his pants down to his ankles. According to the victim, he penetrated her vagina twice with his penis. She tried to resist but was unable to call for help because he put his hand over her mouth. Afterwards, they left in different directions at the same time. The victim went immediately to the police station and reported that she had been raped. A police detective corroborated that the victim came into the station at 12:41 a.m.

Hawk testified on his own behalf, denying that he had ever had sexual intercourse with the victim. He admitted that he had spoken to the victim at the bar on the evening of August 1, 1993, but stopped talking to her when she did not respond to his attempts at conversation. According to Hawk, he and a friend, Steven Easton, left the bar at 10:45 p.m. They went to Hawk's sister's house, arriving at approximately 11:05 p.m., and stayed until approximately 1:45 a.m. Hawk and Easton drank and socialized with his sister and another acquaintance, Jack Boone. Boone then drove Hawk to his home at approximately 2:00 a.m. Easton and Hawk's sister corroborated his alibi testimony.

Further to corroborate his alibi defense, Hawk attempted to present the testimony of Sarah Gotwald, a forensic scientist of the Pennsylvania State Police Crime Lab, concerning the test results of a rape kit administered to the victim shortly after the incident.[2] The Commonwealth objected on the basis of

2. The trial court recognized Gotwald as an expert in the field of forensic science, a matter not at issue in this appeal. The witness explained that forensic scientists use sciences such as chemistry, biolo-

relevancy. The trial court heard the scientist's testimony *in camera.*

At the *in camera* hearing, the scientist testified that she tested vaginal and saliva swabs from the victim for the presence of semen. Both swab tests were negative. The scientist found no foreign pubic hair on the victim. She found no hair, foreign fibers or skin tissue under the victim's fingernails. The scientist obtained a blood sample from the victim that was unsuitable for testing. She examined the victim's underwear and did not detect any semen there. She did find human blood in the crotch area but did not perform genetic marker testing on it. When asked what conclusions she reached based on these findings, the scientist responded:

> A. I will preface with the idea that if semenal [sic] material is identified, that is very straightforward. We can, that is an indicator that there was penetration and ejaculation. In the absence of evidence, it is not, you cannot make any clear cut determination or statement like that. You can consider the possibilities and the possibilities include that there was no penetration. They include that there was penetration with no ejaculation or penetration with ejaculation elsewhere, or penetration with ejaculation and the sample was lost because of activities of the victim before she gets to the hospital. When you don't have the evidence, you have to consider the possibilities that may have happened.

\* \* \*

> THE COURT: Do you also consider that there could have been a condom used?
>
> THE WITNESS: Yes.
>
> THE COURT: So in other words, what you are saying is that where you find no semenal [sic] fluid, you can't say

gy and physics to examine evidence in a case. Notes of Testimony, February 8, 1994, at 111. Gotwald stated that she specifically works in the field of serology, which involves the detection, identification, and characterization of biological evidence such as seminal material, blood, hair and fibers, usually in the context of rape, homicide and burglary investigations. *Id.* at 111–12.

anything other than speculate as to the possibilities of why there is none?

THE WITNESS: That's correct.

THE COURT: Would that be the same for the pubic hairs, the lack of pubic hairs? You would speculate as to why there was none?

THE WITNESS: Any time there is an absence of evidence, you can't say something clear because there are all sorts of possibilities, the first being that it may never have been there. The second being that it may have been there and lost in some way. That sort of thing. You have to consider those issues in the absence of evidence.

Notes of Testimony, February 8, 1994, at 115–19. After hearing argument on the admissibility of the scientist's testimony, the trial court concluded that "[a]lthough the evidence offered by Ms. Gotwald may be logically relevant in enhancing the *possibility* that intercourse did not occur, it does not enhance the *probability* that there was no intercourse." *Id.* at 120 (emphasis added). Therefore, the trial court ruled that the evidence is not relevant to the material issues in this case, and excluded the evidence at trial.

Following trial, a jury convicted Hawk of rape. The trial court sentenced him to a term of imprisonment of six to twelve years.

The Superior Court affirmed, holding that the scientist's inability to reach any conclusion from the negative test results, and her concession that she would have to speculate as to the meaning of the results, would not assist the finder of fact in determining whether intercourse occurred. The court explained that the negative test results did not make the inference—that Hawk did not engage in sexual intercourse with the victim—more probable than not. According to the court, the inconclusive evidence would require the jury to speculate whether intercourse did in fact occur.

On appeal to this Court, Hawk argues that the trial court erred in precluding the scientist's testimony. We agree.

■

## Discussion

■ The admissibility of evidence is a matter committed to the sound discretion of the trial court; an appellate court may reverse a trial court's ruling only upon a showing that the trial court abused its discretion. *Commonwealth v. Cohen,* 529 Pa. 552, 605 A.2d 1212 (1992).

■ In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. *Commonwealth v. Crews,* 536 Pa. 508, 640 A.2d 395 (1994); *see, e.g., Commonwealth v. Dollman,* 518 Pa. 86, 541 A.2d 319 (1988). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Commonwealth v. Spiewak,* 533 Pa. 1, 8, 617 A.2d 696, 699 (1992). Evidence that merely *advances an inference* of a material fact may be admissible, even where the inference to be drawn stems only from human experience. *See, e.g., Dollman* (jury could have interpreted disposal of victim's body as evidencing consciousness of guilt). Moreover, even in the case of expert testimony, "[t]o be relevant, evidence need not be conclusive." *Crews,* 536 Pa. at 523, 640 A.2d at 402.

■ In *Crews,* a rape and murder prosecution, we upheld the trial court's admission of a DNA expert's opinion that DNA evidence found at the crime scene was "strongly associated" with the DNA of the defendant.[3] *Id.* We acknowledged that DNA evidence can never provide absolute proof of identity. However, we reasoned that "the relevant, though incon-

3. Specifically, in *Crews,* the defendant argued that the trial court erred in permitting the prosecution to present the results of the physical DNA testing without a statistical analysis to demonstrate the probability of a match. As of that time, the scientific community recognized the reliability of the physical examination of DNA samples to determine matches at various loci, called alleles. The issue in *Crews* was whether the statistical evaluation of physical DNA matches had achieved such widespread acceptance in the scientific community within the meaning of *Frye v. United States,* 293 F. 1013 (D.C.App.1923). We agreed with the trial court that the record failed to demonstrate the reliability of such statistical analysis.

clusive, DNA evidence was admissible ... [and that] its weight and persuasiveness were properly matters for the jury to determine." *Id.* at 524, 640 A.2d at 403. Applying the *Crews* rationale here, we conclude that the rape kit evidence, though inconclusive, was relevant to the issue of whether sexual intercourse occurred. It was for the jury to determine its weight and persuasiveness.

Pursuant to the Crimes Code, rape occurs when a person "engages in sexual intercourse with a complainant ... [b]y forcible compulsion [or][b]y threat of forcible compulsion that would prevent resistance by a person of reasonable resolution...." [4] 18 Pa.C.S. § 3121. "Sexual intercourse," "[i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S. § 3101. Penetration, however slight, is therefore an essential element of rape.

■ Positive rape kit test results are admissible when offered by the prosecution to corroborate testimonial evidence. *See, e.g., Commonwealth v. Campbell,* 244 Pa.Super. 505, 368 A.2d 1299 (1976). In *Campbell,* a rape victim testified that the defendant had sexually assaulted her. The Superior Court upheld the admission of rape kit evidence showing the presence of sperm in the victim's vagina. The prosecution, however, presented no scientific evidence identifying the sperm as that of the defendant. Consequently, the evidence showing

**4.** The statute in its entirety provides:

A person commits a felony of the first degree when he or she engages in sexual intercourse with a complainant:

(1) By forcible compulsion.

(2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

(3) Who is unconscious or where the person knows the complainant is unaware that the sexual intercourse is occurring.

(4) Where the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance.

(5) Who suffers from a mental disability which renders the complainant incapable of consent.

(6) Who is less than 13 years of age.

18 Pa.C.S. § 3121.

the presence of sperm served only to corroborate the victim's testimony that the defendant had raped her. When positive rape kit test results are relevant to corroborate a victim's testimony, it follows that negative test results, corroborative of a defendant's denial of a rape allegation, are probative of a lack of sexual intercourse.

Here, in order to prove the crime of rape, the Commonwealth relied primarily on the victim's testimony to establish that Hawk and the victim had engaged in sexual intercourse. Hawk, on the other hand, presented an alibi defense, completely denying that he had engaged in sexual relations with the victim. He was forced to rely on his testimony and that of his alibi witnesses.

The results of the rape kit tests, showing a lack of semen and foreign pubic hair, were consistent with Hawk's assertion that he did not engage in sexual intercourse with the victim. Further, although the forensic scientist could not state conclusively that no intercourse occurred, her testimony concerning the possibility that no intercourse occurred would have supported a reasonable inference that Hawk did not have sexual intercourse with the victim. Because the competing allegations in this case rested on testimonial evidence, scientific evidence corroborative of Hawk's denial of sexual intercourse would have been highly probative of his credibility.

In addition, the trial court's concern for speculation was misplaced. The scientist opined that the negative test results, showing no semen or foreign pubic hair on the victim, were inconclusive as to whether intercourse occurred. The inconclusiveness of the negative test results does not render the scientist's testimony inadmissible. *Crews.* She was able to offer various possible theories to explain the negative test results. Thus, her testimony would have assisted the jury in its interpretation of the physical evidence. Besides, the Commonwealth would have been entitled to cross-examine the scientist to challenge the reliability of her findings and conclusions. *See Commonwealth v. Seville,* 266 Pa.Super. 587, 405 A.2d 1262 (1979). While assessing the scientist's credibility and the weight to afford the evidence, the jury would have

been free to accept or reject part, none, or all of the scientific evidence. *Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986).

Because we conclude that the trial court abused its discretion in precluding the forensic scientist's testimony concerning the rape kit test results, we reverse and remand for a new trial.

NIGRO, J., files a concurring opinion.

CAPPY, J., files a dissenting opinion.

NIGRO, Justice, concurring.

Since I believe that the expert's testimony regarding the negative rape kit test results is relevant under the *Spiewak* standard for relevancy,[1] I join Madame Justice Newman's majority opinion but write separately to address some of the concerns raised by Mr. Justice Cappy in his dissenting opinion.

Here, the expert testified in camera that the absence of semen or foreign pubic hairs from the rape kit test could indicate several possibilities: that there was no penetration, that there was penetration but with no ejaculation or external ejaculation, or that there was penetration and ejaculation but samples were lost due to victim activity subsequent to penetration or that a condom had been used. Given these various possibilities explaining negative test results, Justice Cappy dissents finding the expert's testimony too speculative to aid the jury in determining whether penetration occurred. However, I find the expert's testimony regarding the negative rape kit test results relevant. At the very least, the testimony supports a reasonable inference or presumption regarding the existence of a material fact—whether or not penetration occurred. Thus, I would find the expert testimony admissible.

1. Under *Commonwealth v. Spiewak,* evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. *Spiewak,* 533 Pa. 1, 617 A.2d 696 (1992).

While I understand Justice Cappy's concerns, I believe they can effectively be curtailed in the course of normal trial practice. Counsel is entitled to question the victim regarding whether or not a condom was used, if or where any ejaculation occurred, and whether any activity, subsequent to penetration, may have caused a loss of samples. These questions can narrow the possibilities advanced by the expert in explaining the negative test results. The jury can then attribute what weight it deems appropriate to the expert's testimony.

CAPPY, Justice, dissenting.

I respectfully dissent as I believe that the courts below did not abuse their discretion when they determined that the expert's testimony was speculative and therefore inadmissible.

It is axiomatic that "the fundamental consideration in determining the admissibility of evidence is whether the proffered evidence is relevant to the fact sought to be proved. Evidence is relevant if it tends to make a fact at issue more or less probable." *Martin v. Soblotney*, 502 Pa. 418, 422, 466 A.2d 1022, 1024 (1983). When considering whether expert testimony is admissible, a trial court is cautioned to allow into evidence only that testimony which aids the jury in deciding the case before it. *Commonwealth v. Terry*, 513 Pa. 381, 399, 521 A.2d 398, 407 (1987). In reviewing a trial court's determination on the admissibility of expert testimony, we have steadfastly adhered to the rule that such determinations are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Commonwealth v. Petrovich*, 538 Pa. 369, 372, 648 A.2d 771, 772 (1994).

In the matter *sub judice*, the expert presented no testimony that would make a material fact "more or less probable" as she was unable to opine what the absence of physical evidence meant. The expert stated that the negative rape test kit could indicate that any number of scenarios occurred, including that there had been no penetration, or penetration with no ejaculation, or penetration with ejaculation elsewhere, or penetration with ejaculation and the sample was lost. Notes of Testimony, February 8, 1994, at 115–119. This testimony gave a list of

possibilities which included virtually every possible scenario without any indication as to whether one of these scenarios was more likely than the other. As the lower courts recognized, such speculative testimony would not aid the jury in its task of determining whether sexual intercourse did occur here. Therefore, I believe that the lower courts did not abuse their discretion when they held that the testimony was irrelevant.

The majority reasons that this speculative testimony was nonetheless admissible because this court has stated that inconclusiveness of an expert's opinion does not alone render it inadmissible. Majority slip op. at 10. In support of this proposition, the majority relies upon *Commonwealth v. Crews*, 536 Pa. 508, 640 A.2d 395 (1994).

I agree with the majority that *Crews* states that a lack of conclusiveness in an expert's testimony does not automatically preclude the admission of this testimony. Yet, I do not see that this holding aids the majority here. In *Crews*, the prosecution's expert tendered his opinion on the similarities between the DNA patterns found in seminal fluid recovered from the murder victim and the defendant's DNA patterns. The expert did not state with certainty that the DNA patterns in the seminal fluid were a perfect match with the defendant's DNA patterns. The expert was, however, able to form an opinion that the seminal sample taken from the murder victim had three of four markers in common with the DNA of the defendant. This court concluded that this testimony was relevant, even though it was inconclusive, because it tended to make defendant's presence at the crime scene more probable. *Id.* at ——, 640 A.2d at 402.

Our holding in *Crews* that an inconclusive expert opinion may still be admissible so long as it tends to make a material fact more or less probable did nothing more than restate the general rule of relevancy in a particular context. I cannot agree with the majority that *Crews* somehow sanctions the admission of the testimony at issue here since the expert's opinion in no manner made it more or less probable that sexual intercourse occurred.

Finally, because I believe that this expert's testimony was speculative and therefore inadmissible, I would not address the broader issue of whether negative rape test kit evidence is generally relevant in establishing whether sexual intercourse had occurred. I would leave the determination of that issue for a case where the expert was able to testify in a non-speculative manner.

For the foregoing reasons, I respectfully dissent.