**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Barbara Ann KITCHEN, Appellee.**

Superior Court of Pennsylvania.

Argued March 9, 1999.

Filed April 30, 1999.

As Revised May 19, 1999,

---

John M. Morganelli, Dist. Atty., Easton, for the Com., appellant.

Robert Eyer, Easton, for appellee.

Before KELLY, LALLY–GREEN and BROSKY, JJ.

BROSKY, J.

¶ 1 The Commonwealth of Pennsylvania ("Commonwealth") appeals from the October 6, 1998 trial court order that granted in part Defendant–Appellee Barbara Kitchen's motion *in limine* to exclude from admission into evidence at trial a videotape of her interrogation by police.

¶ 2 On September 9, 1997 Donald F. Reiman, Jr., who was Appellee's paramour, was shot to death beside an isolated fishpond in Northampton County; his body was discovered a few days later. On September 14, 1997 Pennsylvania State Police Trooper David Seip went to Appellee's home and informed her of Mr. Reiman's death. According to police, she expressed "feigned shock" upon hearing of Reiman's murder. Commonwealth's Brief at 14.

¶ 3 On September 15, 1997, after investigation by local and the State Police, co-defendant John Mead, who was also Appellee's paramour, was questioned by police. Mr. Mead admitted to police that he had shot and killed Mr. Reiman. Mead also told police that he and Appellee planned the murder and that Appellee had lured Mr. Reiman to the fishpond so that Mead could kill him.[1]

¶ 4 According to the affidavit of probable cause attached to the criminal complaint against Appellee, further police investigation on September 15, 1997 revealed that on September 9, 1997 Andrew J. Gabovitz was at Harry White's residence, along with Mead and a woman named Barbara (Appellee). According to Gabovitz, Mead stated that "Barbara's old boyfriend ... named Don", was harassing her and that Mead "was going to kill this man." Affidavit of Probable Cause, 9/15/98, at p. 1. On September 11, 1997 Gabovitz was again at the White residence and White told him that Mead "had in fact killed the guy." *Id.* Other alleged witnesses observed an "orange pickup truck with a white cap" on September 9, 1997 at the site at which Mr. Reiman was murdered. *Id.* White also allegedly told Gabovitz that Mead had driven his orange pickup to Ponderosa Fibres (where the killing occurred) and shot Reiman two times, that Barbara was present at the killing and that after Reiman had been killed, Mead and Barbara took several items belonging to Reiman, including a stool, lantern and fishing equipment. *Id.* After the killing on September 9, 1997 Mead allegedly asked White to hide the murder weapon and placed it in White's "welding rig." *Id.* On September 11, 1997 Mead retrieved the murder weapon. *Id.*

¶ 5 The police subsequently identified "Barbara" as Appellee and on September 15, 1997 a warrant was issued for her arrest. That same day Appellee, while at

---

1. Mead intends to testify at Appellee's trial but he will be tried separately.

the Northampton Borough Police Department headquarters, voluntarily consented (*i.e.*, she was read *Miranda*[2] warnings and she replied that she wanted to speak to the officers) to a videotaped interrogation by police officers. The interrogation lasted approximately two and one-half hours and was attended by several police officers and, at times, the Northampton County District Attorney. That same day Appellee was charged with homicide and criminal conspiracy to commit homicide.

¶ 6 The Commonwealth proposed to show the tapes in their entirety at Appellee's scheduled October 6, 1998 jury trial. On October 5, 1998 Appellee filed a motion *in limine* to exclude from introduction into evidence at trial the two and one-half hours of videotape (comprised of three separate videotapes) of her September 15, 1997 interrogation by police; Appellee averred that "the total effect of the videotapes was impermissibly inflammatory and prejudicial to the defense." Trial Court Opinion, 10/26/98, at 1. Appellee primarily objected to the alleged "hearsay-laden, inflammatory and accusatory nature of the entire custodial interrogation." Appellee's Brief at 4. On October 6, 1998 the trial court granted in part Appellee's motion, stating that "relevant admissions" made by Appellee on the videotapes could be introduced into evidence at trial "but only as unaffected by the damaging hearsay and inflammatory accusatory statements of the police examiners, all of which are intertwined in the extra-judicial examination." Trial Court Opinion, *supra* at 1. The trial court proposed an "abstract [*i.e.*, with redaction] of the [video]tape[s] or written transcript of the tapes...." *Id.* at 2. At the October 6, 1998 hearing[3] Northampton Common Pleas Court Judge James C. Hogan stated,

> Although the Commonwealth has not accepted the Court's invitation to submit

the portions of the interrogation it believes relevant nor provided any suggested redaction, the Court finds among others, the following relevant admissions in answer to non-inflammatory questions by the officer that developed:

A. A longstanding relationship with the un-tried [Sic] co-charged shooter [Mead], an intended Commonwealth witness.

B. A longstanding relationship with the victim, her "boyfriend. [Reiman]"

C. Knowledge of the shooter's hatred and threats to kill the victim.

D. [Appellee's] [p]resence in the shooter's company on the night of the shooting.

E. Presence in the victim's company on the night of the shooting; telephone arrangements to meet the victim in a remote fishing site, made within earshot of the shooter.

F. Presence at the scene, witness [ing] of the shooting, identification of shooter at the scene and ultimate flight from the scene.

The ruling to bar showing of the tapes to the jury in the case-in-chief is based on the intermingling throughout the interrogation of the [police] officers' accusatory statements:

1. That she [Appellee] is going to be arrested for conspiracy and murder.

2. That witnesses will connect the Defendant to the murder.

3. The co-defendant shooter [Mead] is in custody.

4. That the Defendant is lying, that she knows she is lying and the like.

5. That the officer would not be acting so accusingly if he did not have a firm case—and the like.

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** The trial court refers to the hearings held regarding the instant issues as "Notes of Con-

ference", but we will refer to them as hearings and cite to them as Notes of Testimony ("N.T.").

The tapes taken as a whole would inflame the jury to the side of the prosecution, and against the reluctant defendant—who though evasive, and on some matters self-contradictory—never abandoned her denial of criminal involvement.

On many occasions, the defendant stood mute, indicated by conduct her intention not to answer, or rendered non-responsive but not necessarily misleading answers to accusatory statements.

. . . .

The [trial] Court has viewed the tapes in their entirety. They reflect a woman who acts bizarrely, frequently speaks with a pattern unrelated to answers to immediate questions, seems alternatively confused and distraught, or in full control—but always denying any knowing criminal involvement.

The facts to which she does admit, and which the Court had permitted in the Commonwealth's case-in-chief, with all the other evidence the Commonwealth has disclosed it is prepared to offer, clearly establishes proof of the elements of conspiracy and complicity in the homicide.

The [trial] Court fails to see that its ruling presents injury to the Commonwealth's case that elevates the probative value of showing "the tapes", a form preferred by the Commonwealth, over the patent inflammatory nature. While the Commonwealth is entitled to exercise its discretion in the strategy and the tactics of its case presented, it appears to be putting form over substance in its intransigent decision to reject the Court's invitation to submit a suggested redaction of the tapes or transcript displaying those areas of the interrogation which it believes will establish its case. The Court can do no more.

. . . .

N.T., 10/6/98, at 2–4, 5–6.

¶ 7 Judge Hogan offered the Commonwealth the opportunity to submit redacted tapes or a redacted transcription of the tapes. The Commonwealth declined both offers and the conversations on the tapes were never transcribed. The three tapes have been included as exhibits on appeal and we have reviewed the tapes in their entirety.

¶ 8 The October 6, 1998 Notes of Testimony essentially constitute the order appealed from, with the Commonwealth certifying, pursuant to Pa.R.A.P. 311(d), that the trial court order will terminate or substantially handicap the prosecution of Appellee.

¶ 9 We note that Appellee is not alleging that the videotaping of her interrogation was improper or that any of her statements made during the interrogation were involuntary.[4] She agrees that portions of the videotapes may be presented to a jury as part of the Commonwealth's case-in-chief, but she also concurs with Judge Hogan's determination that redacted versions of the videotapes tapes should be admitted into evidence. Appellee also agrees that the evidence contained on the three tapes is relevant and probative, but that its prejudicial effect outweighs its probative value. When she filed her motion *in limine,* she essentially argued that the videotapes contained hearsay statements by police interrogators and that the police questioning of her contained "inflammatory" information and involved an "accusatory nature". Appellee's Brief at 9.

¶ 10 We reiterate that the trial court did not rule that the three tapes were wholly inadmissible as part of the Commonwealth's case-in-chief. The trial court stated that portions of the three tapes were inadmissible, as part of the Commonwealth's case-in-chief, since they contained

---

**4.** In fact, Appellee was told several times during the videotaping that the videotapes would be shown to the jury during her trial.

hearsay and inflammatory and prejudicial remarks by the police interrogators. The trial court also stated that it was not barring use of any part of the tapes in any other aspects of the Commonwealth's case against Appellee (*i.e.*, other than as part of the Commonwealth's case-in-chief). Hence, in this appeal we will only determine if the trial court properly excluded from introduction into evidence certain portions of the three videotapes.

¶ 11 The Commonwealth's issues on appeal are as follows.

1. A videotaped statement of a criminal Defendant charged with homicide, who has admittedly voluntarily waived Fifth Amendment rights pursuant to *Miranda,* and which statement is internally inconsistent and contradictory as to the Defendant's participation and knowledge of the murder at issue, depicting the Defendant as evasive and untruthful, and which is inconsistent and contradictory to other prosecution evidence, is admissible in its entirety under the admission by party opponent exception to the hearsay rule, Rule 803(25) of the Pennsylvania Rules of Evidence.

2. The trial court's order, precluding the jury from seeing and hearing a properly *Mirandized* Defendant's videotaped statement to police, prejudices the Commonwealth with respect to the jury's determination as to the voluntariness of the Defendant's extrajudicial statement which requires the jury to examine the totality of the circumstances surrounding the giving of the statement.

The Commonwealth's Brief at 13, 27. We affirm in part and reverse in part the October 6, 1998 trial court order.

¶ 12 In the Commonwealth's issue number one it claims that all three tapes should be admitted in their entirety at trial pursuant to Pa.R.E. 803(25), and that the probative value of the tapes outweighed any possible prejudicial effect on a jury.

¶ 13 Appellee agrees that her videotaped statements are admissible pursuant to Pa.R.E. 803(25), but that portions should be redacted because they contain hearsay and inflammatory and prejudicial evidence.

¶ 14 As mentioned, *supra,* Judge Hogan specifically barred portions of the videotapes regarding police officers' statements to Appellee that: (a) she is going to be arrested for murder; (b) witnesses will connect Appellee to the murder; (c) Mr. Mead was in police custody; (d) Appellee is lying to police and she is aware that she is lying; and, (e) the police would not be accusing Appellee of murder and conspiracy if they did not have a solid case against her. Furthermore, Judge Hogan considered videotape portions, regarding Appellee's failure to respond to accusatory police questions concerning Appellee's participation in the instant crimes, to be objectionable and excluded said portions.

¶ 15 Our Court stated in *Commonwealth v. Pacek,* 456 Pa.Super. 578, 691 A.2d 466 (1997), *appeal dismissed,* 550 Pa. 513, 707 A.2d 511 (1998),

> In reviewing an order granting a motion to suppress, an appellate court may consider only the evidence of the defendant's witnesses and so much of the Commonwealth's evidence that, read in the context of the record as a whole, remains uncontradicted. Furthermore, our scope of appellate review is limited primarily to questions of law. We are bound by the suppression court's findings of fact if those findings are supported by the record. Factual findings wholly lacking in evidence, however, may be rejected. [Citation omitted.]

*Pacek, supra* at 469.

¶ 16 Our Supreme Court stated in *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693 (1998),

> The admission of evidence is committed to the sound discretion of the trial court. Thus, this Court's standard of review is

for an abuse of discretion. Discretion is abused when the course pursued by the trial court represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. [Citations omitted.]

*Id.* at 52, 720 A.2d at 704.

¶ 17 Our Supreme Court stated in *Commonwealth v. Hawk*, 551 Pa. 71, 709 A.2d 373 (1998),

In determining the admissibility of evidence, the trial court must decide whether the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. Evidence that merely advances an inference of a material fact may be admissible, even where the inference to be drawn stems only from human experience. Moreover, even in the case of expert testimony, to be relevant, evidence need not be conclusive. [Citations omitted.]

*Id.* at 77, 709 A.2d at 376.

¶ 18 Our Court stated in *Commonwealth v. Palmer*, 700 A.2d 988 (Pa.Super.1997),

Evidence that is relevant, *i.e.*, probative of a material fact, may still be excluded if its probative value is outweighed by its prejudicial effect. However, since all Commonwealth evidence in a criminal case will be prejudicial to the defendant, exclusion of otherwise relevant evidence will only be necessary where the evidence is so prejudicial that it may inflame the jury to make a decision based upon something other than the legal propositions relevant to the case. As this Court has noted, a trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts form part of the history and natural development of the events and offenses with which defendant is charged [Citations omitted.]

*Id.* at 992–993.

¶ 19 Pa.R.E. 403 states,

**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Id.*

¶ 20 A videotaped interrogation of a criminal defendant may be introduced as substantive evidence at that defendant's trial. *See Commonwealth v. Marrero*, 546 Pa. 596, 687 A.2d 1102 (1996); *Commonwealth v. Probst*, 398 Pa.Super. 44, 580 A.2d 832 (1990).

¶ 21 Pa.R.E. 801(c) states, "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.* Pa.R.E. 802 states, "Hearsay is not admissible except as provided by these rules, by other rules prescribed by the Pennsylvania Supreme Court, or by statute." *Id.*

¶ 22 Pa.R.E. 803(25) states,

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

(25) Admission by Party–Opponent. The statement is offered against a party and is . . . the party's own statement in . . . an individual . . . capacity [.]

*Id.*

¶ 23 Voluntary extrajudicial statements made by a defendant may be

used against a defendant even though they contain no admission of guilt. *Commonwealth v. Simmons*, 541 Pa. 211, 662 A.2d 621 (1995). "The extrajudicial statements, which differ from confession in that they do not acknowledge all essential elements of a crime, are generally considered to qualify for introduction into evidence under the admission exception to the hearsay rule." *Id.* at 239, 662 A.2d at 635.

 ¶ 24 After reviewing all three videotapes we agree with Judge Hogan and the parties that the videotape references to (a) Appellee's longstanding relationships with the victim and Mead; (b) Appellee's knowledge of Mead's dislike of the victim and threats to kill him; (c) Appellee's presence with Mead at the scene of the murder on the evening that it was committed; (d) Appellee's presence with the victim on the evening of the murder, her arrangements to meet him at the site where the murder subsequently occurred and the fact that Mead was within sufficient physical distance from Appellee to overhear her telephone conversation with the victim regarding their plan to meet that evening; and (e) Appellee's "witness[ing] of the shooting, identification of the shooter at the scene and ultimate flight of the scene" are admissible at trial. N.T., 10/6/98, at 5–6. All of the aforementioned evidence is relevant to a determination of whether Appellee is guilty of the instant crimes, and is admissible under the admission exception to the hearsay rule. *Commonwealth v. Hawk, supra; Commonwealth v. Simmons, supra;* Pa.R.E. 803(25).

¶ 25 We now turn to the challenged evidence, which the Commonwealth avers should not have been excluded from Appellee's scheduled trial. We have viewed the three tapes, enumerated Tape 1, Tape 1A and Tape 2, in their entirety. Tapes 1 and 2 are of approximately the same length, and Tape 1A is substantially shorter than the other two. Pennsylvania State Trooper David Seip, assisted by Trooper Judith Schreiber, questioned Appellee on Tapes 1 and 2; Northampton Borough Police De-

tective Robert Lindenmoyer and Trooper Schreiber questioned Appellee on Tape 1A. Northampton County District Attorney John M. Morganelli intermittently observed the interrogation of Appellee and occasionally spoke to her.

¶ 26 Appellee's demeanor during the interrogation ranged from assertive, relaxed and self-confident to angry and distraught, with numerous instances of crying. On Tape 1 she initially stated that she was not in the presence of either Mead or the victim on the day or evening of the murder and that she had no plans to meet with the victim on the evening of the murder; she stated that she was not sexually involved with Mead and that they were simply close friends; she also initially stated that she did not know how the murder occurred but subsequently stated that Mead told her that he shot and killed the victim; and, Appellee stated that she was not involved in any way in the planning or commission of the murder. On Tape 1A Appellee stated that she and the victim went to the fishpond on the evening of the murder, that Mead arrived and told her to leave the scene and that she subsequently heard two gunshots that sounded like "pops". On Tape 2 Appellee stated that when Mead arrived at the fishpond he told Appellee, "Get the fuck out of here", and that when she got into her car to leave Mead shot the victim; Appellee also stated that she knew where Mead hid the murder weapon, and that Mead was in the same room with her and could hear her telephone conversation with the victim, during which she made plans to meet the victim at the fishpond on the evening of the murder.

 ¶ 27 The trial court excluded several police comments that informed Appellee that she was going to be arrested for murder. We fail to see why these comments should be redacted from the tapes since Appellee was immediately thereafter arrested for murder and a jury would obviously be aware of that fact. Any reference to the fact that Appellee was going to be arrested was not prejudicial to her case,

was not an inflammatory statement and can be included in the videotapes to be displayed to the jury.

■ ¶ 28 The trial court excluded any police comments that informed Appellee that there were witnesses who had enlightened them regarding Appellee's connection to the murder. Again, we fail to see why such comments should be excluded from the tapes since the criminal complaint and attached affidavit of probable cause reveal the identity of these witnesses and the Commonwealth avers that they will testify at Appellee's trial. The comments were not prejudicial to Appellee, were not inflammatory and do not constitute hearsay evidence since the witnesses will allegedly testify at Appellee's trial and can be cross-examined by Appellee's counsel. Hence, any comments regarding witnesses who will connect Appellee to the murder can be included in the videotapes displayed to the jury.[5]

■ ¶ 29 The trial court also excluded any police comments that informed Appellee that Mead was in police custody. We fail to see why such comments should be redacted since Mead was in police custody at the time Appellee was being interrogated, the jury will be informed of that fact at trial and Mead will testify for the Commonwealth at Appellee's trial. The police comments were merely a statement of fact and were not prejudicial to Appellee or inflammatory. Hence, any statements regarding the fact that Mead was in police custody can be included in the videotapes displayed to the jury.

■ ¶ 30 The trial court also excluded several instances where the police, either directly or indirectly, accused Appellee of lying. We agree with Judge Hogan that these comments must be redacted from the videotapes. When the troopers stated to Appellee, "You're lying", or "We know that you're lying" or phrases to that effect, their statements were akin to a prosecutor offering his or her opinion of the truth or falsity of the evidence presented by a criminal defendant, and such opinions are inadmissible at trial. *Commonwealth v. Henry*, 550 Pa. 346, 706 A.2d 313 (1997). The troopers' statements could also be analogized to a prosecutor's personal opinion, either in argument or via witnesses from the stand, as to the guilt or innocence of a criminal defendant, which is inadmissible at trial. *Commonwealth v. Peterkin*, 538 Pa. 455, 649 A.2d 121 (1994), *cert. denied*, 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995).

¶ 31 Specifically, the troopers stated four times on Tape 1 that Appellee was "lying". On Tape 1A there were three instances, one at the beginning and two at the end of the tape. At the beginning of Tape 1A Trooper Schreiber stated, regarding Tape 1, "There were a lot of things we know were not true." At the end of Tape 1A the troopers stated, "This is not the story we've been getting from other people" and "This is something different from what you've said before." On Tape 2 there were five accusations of lying or untruthfulness: three were direct accusations and two involved indirect accusations. All of

5. Appellee admits that all of her statements to the police were voluntary so there is no issue regarding any statements elicited by police on the videotapes. But we note that, *arguendo*, even if there had been no witnesses who could have allegedly connected Appellee to the murder, the police officers' statements to Appellee regarding witnesses would have been proper since, "in certain circumstances, the use of artifice or deception to obtain a confession [or, by analogy, to attempt to prod a suspect into providing more candid information during an interrogation] is insufficient to make an otherwise voluntary confession [or voluntary statements by a suspect] inadmissible where the deception does not produce an untrustworthy confession [or statements] or offend basic notions of fairness." *Commonwealth v. Williams*, 537 Pa. 1, 17–18, 640 A.2d 1251, 1259 (1994). However, if the Commonwealth had no witnesses to produce in the instant case, then any comments to Appellee, on the videotapes, relating to witnesses would have to be redacted; the deception would be permissible, but it could not be displayed before the jury since the police comments would be irrelevant and prejudicial.

the aforementioned twelve accusations of lying and untruthfulness must be redacted from the videotapes prior to their submission to a jury. *Commonwealth v. Henry, supra; Commonwealth v. Peterkin, supra.*

¶ 32 We add that there were several instances on the videotapes when the troopers asked Appellee whether she had lied about a particular fact and she gave an answer in response. None of these police inquiries need to be redacted from the videotapes since they were in question form, did not involve an opinion as to the truth or falsity of Appellee's statements or an opinion as to the guilt of Appellee, and Appellee offered responses to the inquiries.

¶ 33 The trial court also excluded several instances of police questioning coupled with a lack of responses on the part of Appellee, which if shown to a jury would constitute an improper reference to Appellee's pre-arrest silence. We agree with Judge Hogan that the references must be redacted from the videotapes.

¶ 34 Our Supreme Court stated in *Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492 (1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998),

> Evidence of a defendant's silence in refusing to deny guilt after an accusation of guilt has been made (often referred to as a tacit admission) is generally not admissible where the silence occurred while the defendant is in police custody because a contrary policy would effectively vitiate a defendant's constitutionally guaranteed [Fifth Amendment] right against self-incrimination. However, this principal of not allowing evidence of a tacit admission by the defendant does not extend to instances where the defendant does not choose to remain silent but instead volunteers responses to police questioning.
>
> . . . .

> Once [a defendant chooses] to make a response, that response, and the circumstances surrounding the response, [a]re properly made available for the jury's consideration in evaluating the credibility of the verbal denial based on a contemporaneous non-verbal act. [Citations omitted.]

*Id.* at 385–86, 701 A.2d at 509. Our Court stated in *Commonwealth v. Drass*, 718 A.2d 816 (Pa.Super.1998), "It is a clear violation of the accused's constitutional right against self-incrimination to make a reference at trial to his silence while in police custody." *Id.* at 821.

¶ 35 At the very end of Tape 1, the police accused Appellee of failing to come forward with the true story regarding the murder when they questioned her on September 14, 1997 (*i.e.*, that Appellee knew on that date that Mead had killed the victim and that she failed to apprise police of that fact). Following the accusation Appellee sat silently and the tape ended. The police accusation and Appellee's lack of response must be redacted from the videotape since it violates Appellee's Fifth Amendment right against self-incrimination. *Commonwealth v. Hawkins, supra; Commonwealth v. Drass, supra.*

¶ 36 At the beginning of Tape 1A, Trooper Schreiber stated, referring to Tape 1, "There were a lot of things we know were not true." Appellee failed to respond. Trooper Schreiber's comment and Appellee's lack of response must be redacted from the videotape before it can be shown to a jury.[6] *Hawkins, supra; Drass, supra.* At the end of Tape 1A, the trooper stated, "This is not the story we've been getting from other people" and "This is something different from what you've said before." Appellee failed to respond. These two police comments and Appellee's failure to respond must also be redacted

6. As discussed, *supra*, Trooper's Schreiber's comment was also excluded as an improper opinion regarding the truth or falsity of Appellee's statements to police.

from the videotape.[7] *Id.*

¶ 37 On Tape 2 Trooper Seip stated to Appellee that after Mead exited his truck and told Appellee to leave the fishpond area, "You knew that John [Mead] was going to kill him [the victim]." Appellee sat silently after hearing Trooper Seip's question. Trooper Seip's question and Appellee's lack of response must be redacted from the videotape.[8] *Id.*

¶ 38 We add that any accusatory statement made or question posed by police to Appellee, and Appellee's reaction and/or response to the statement or question, need not be redacted from the videotapes if Appellee responded, even if after a silent pause, to the statement or question. *Commonwealth v. Hawkins, supra.*

¶ 39 The trial court also excluded police statements to Appellee to the effect that, "We have a strong case against you; otherwise we would not be filing criminal charges against you." We find that Judge Hogan properly excluded all such comments since they are irrelevant to the case and are prejudicial to Appellee. Hence, all such comments must be redacted before the videotapes are submitted to a jury.

¶ 40 In the Commonwealth's issue number two it claims that when the trial court omitted portions of the videotapes for submission to a jury, it "prejudice[d] the Commonwealth with respect to

the jury's determination as to the voluntariness of [Appellee's] extrajudicial statement which requires the jury to examine the totality of the circumstances surrounding the giving of the statement." The Commonwealth's Brief at 27.

¶ 41 Our Court stated in *Commonwealth v. Lam*, 453 Pa.Super. 497, 684 A.2d 153 (1996), "In order for a defendant's statements to be admissible, they must be freely and voluntarily given and must not be extracted by any sort of threats or violence. The defendant's will must not have been overborne nor her capacity for self-determination critically impaired. [Citations omitted.]" *Id.* at 165.

¶ 42 Our Court stated in *Commonwealth v. Brown*, 700 A.2d 1310 (Pa.Super.1997),

An individual held for interrogation must be clearly informed as to four specific points: (1) that he has the right to remain silent; (2) that anything he says can be used against him in a court of law; (3) that he has the right to consult with a lawyer; and (4) that counsel will be appointed if he cannot afford a lawyer. *Miranda v. Arizona*, 384 U.S. 436, 471–72, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A warning covering all four of these points is an absolute prerequisite to interrogation. No amount of circumstantial evidence that a person may have been aware of these rights suffices as a

---

7. These police comments were also excluded, *supra*, as an improper opinion regarding the truth or falsity of Appellee's statements to police.

8. We note that a criminal defendant's right against self-incrimination is violated in the aforementioned instances only when the comments or questions, followed by a lack of response from an accused, flow from a law enforcement officer during an interrogation of an accused. If an individual makes an accusatory statement to a person and that person fails to challenge or contradict the statement, evidence of the failure to respond may be admitted at trial. Our Court stated in *Commonwealth v. O'Kicki*, 408 Pa.Super. 518,

597 A.2d 152 (1991), "The rule of evidence is well established that, when a statement made in the presence and hearing of a person if incriminating in character and naturally calls for denial but is not challenged or contradicted by the accused although he has the opportunity to speak, the statement and the fact of his failure to deny it are admissible in evidence as an implied admission of the truth of the charges thus made. The justification of this rule is to be sought in the age-long experience of mankind that ordinarily an innocent person will spontaneously repel false accusations against him, and that a failure to do so is therefore some indication of guilt." *Id.* at 164.

**524**

substitute for full and explicit information prior to interrogation.

[T]he burden is ... on ... the State ... [to make] available corroborated evidence of warnings given during incommunicado interrogation....

Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.... Unless or until the state unequivocally demonstrates that *all* of the *Miranda* warnings were provided, no evidence obtained as a result of the interrogation can be used against the defendant.

It is axiomatic that a confession to be valid must be given free of any physical or psychological coercion which might interfere with one's will to resist. Further, where the custodial interrogation involves the waiver of constitutional rights guaranteed under the Fifth and Sixth Amendments, *the record must clearly demonstrate* that the accused was fully apprised of his rights and knowingly made the decision to waive them. [Citations omitted.]

*Id.* at 1314, 1315.

¶ 43 First, we note that Appellee is not alleging that her videotaped statements to police were involuntary; she admits that they were given voluntarily. From our review of the current state of the record, even accounting for exclusion of the redacted portions of the videotapes, the Commonwealth should readily be able to demonstrate that Appellee was given proper *Miranda* warnings and that she knowingly decided to waive her Fifth and Sixth Amendment rights.

¶ 44 Moreover, we fail to see how our exclusion of minor portions of the videotapes, discussed *supra*, will affect in any way the Commonwealth's ability to establish the admissibility of Appellee's videotaped statements. Accordingly, we find

the Commonwealth's second issue to be without merit.

¶ 45 Order affirmed in part and reversed in part. Case remanded for trial with instructions consistent with this Opinion. Jurisdiction relinquished.