J-A23033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE D. STUART | : | |
| | : | |
| Appellant | : | No. 198 MDA 2023 |

Appeal from the Judgment of Sentence Entered September 29, 2022
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000158-2019

BEFORE:   LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:              **FILED DECEMBER 19, 2023**

Appellant, Bruce Stuart, appeals from the judgment of sentence entered September 29, 2022 in the Court of Common Pleas of Lycoming County. After a careful review, we affirm.

The relevant facts and procedural history are as follows: On January 10, 2019, Appellant was arrested and charged with multiple counts of rape, related sex offenses, and simple assault of his mentally disabled sister-in-law (hereinafter the "victim"). Criminal Information, Reproduced Record, at 16a-19a. On May 25, 2022, after a two-day jury trial, Appellant was convicted of two counts of indecent assault and simple assault. T.P., 5/25/22, at 196-97. During the trial, the victim testified that the Appellant had sexual contact with her against her will over a period of about ten years. The victim's father, the

_____

[*] Former Justice specially assigned to the Superior Court.

police officer who took the report and ordered the victim's examination, the experts who prepared and/or reviewed the results of the examination, character witnesses, and the defendant himself testified. On September 29, 2022, Appellant was sentenced to nine to twenty-two months' incarceration and was required to register as a Tier II sex offender under SORNA for twenty-five years. Appellant filed a post-sentence motion on September 30, 2022, and argument was held on November 21, 2022. On January 24, 2023, Appellant's post-sentence motion was denied. This appeal followed.

Appellant raises three issues, each regarding the trial court's evidentiary rulings on evidence admitted at trial. "A trial court has broad discretion to determine whether evidence is admissible and a trial court's ruling on an evidentiary issue will be reversed only if the court abused its discretion." ***Commonwealth v. Huggins***, 68 A.3d 962, 966 (Pa. Super. 2013) (citing ***Commonwealth v. Cook***, 676 A.2d 639, 647 (Pa. 1996)). We do not disturb a ruling admitting evidence "unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." ***Id***. (quoting ***Commonwealth v. Minich***, 4 A.3d 1063, 1068 (Pa. Super. 2010)). As our scope of review over an evidentiary question is plenary, we may review the ruling within the context of the entire record. ***Id***.

Appellant's first issue is that the court erred in admitting a SANE exam, a serology report, a DNA report, and expert testimony related to the reports, since the reports were from 2018 and the victim testified that in 2018,

Appellant hit her with a paddle but no "sexual stuff" occurred. Appellant's Br. at 6. Specifically, Appellant argues that since the victim's own testimony was that the sexual contact between Appellant lasted from 2008 to 2017, there is no factual basis for the admission of evidence from 2018 of any sexual contact. Appellant's Br. at 14. We disagree that the expert testimony lacked a basis in fact.

The law provides that:

> expert testimony is incompetent if it lacks an adequate basis in fact. While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence. Accordingly, the Pennsylvania Rules of Evidence prescribe a threshold for admission of expert testimony dependent upon the extent to which the expert's opinion is based on facts and data.

***Gillingham v. Consol Energy, Inc.***, 51 A.3d 841, 849 (Pa. Super. 2012) (citation omitted). Thus, an adequate basis in fact must enable the expert to opine with a reasonable degree of certainty and is incompetent if it lacks an adequate basis. ***See id***.

Regarding the bases of opinion testimony by experts, Pa.R.E. 703 relevantly provides the following:

> **Rule 703. Bases of opinion testimony by experts**
> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Pa.R.E. 703 (bold in original). Furthermore, "Pa.R.E. 705 requires an expert witness to testify as to the facts or data upon which the witness's opinion is based, whether or not the facts or data would otherwise be admissible in evidence." ***In the Interest of D.Y.***, 34 A.3d 177, 182 (Pa. Super. 2011) (*en banc*) (citation omitted).

Here, the experts in sexual assault examination, serology, and DNA did testify as to the facts and data upon which their opinions were based, and the victim and Trooper Matthew Miller testified as to the factual basis of the 2018 examination that led to the reports being generated. As the trial court discussed:

> Despite the victim testifying that the Defendant's sexual conduct occurred only until 2017, Trooper Matthew Miller testified that the victim and her father presented to the Pennsylvania: State Police barracks on July 8, 2018, and after an initial conversation with them, he decided to conduct an interview immediately with the victim.
> Q: Was there — at least indicated at that time was there a suspect or perpetrator alleged?
> A: Yeah. So at the time when I spoke with Rebecca she had mentioned that the reason why she was there was because of her brother-in-law, Bruce Stuart.
> . . .
> Q: Were you given a time or timeframe when the acts were alleged to have occurred?
> A: Yeah. So during the interview, Rebecca had mentioned that her sister, Jenny, was away for approximately nine days; and during those nine days, she had been sexually involved with Mr. Stuart, you know, against her will. But she had also mentioned that this had taken place over the course of the last ten years. So it was kind of hard to at the time pinpoint what time and date she was actually referring to at the time, but it was within the last ten years.
> (Transcript of Proceedings, 5/25/22, pg. 125-126). Based on this information, Trooper Miller testified that he advised the victim to

go with her father to get a SANE examination, sexual assault kit, done at the hospital in the meantime to preserve any evidence that may be on her body. (T.P., 5/25/22, pg. 126).

Additionally, Nancy Steil, who was recognized by the Court as an expert in the area of sexual assault examination, provided the following testimony:

Q: As part of your exam, did you collect swabs from any part of her body?
A: Yes, I did.
Q: And from what parts?
A: On the chain of custody form it says that I collected a buccal swab, which is a swab on the inside of the mouth that's used to identify the patient's DNA, an oral swab which would be around her lips and inside of her mouth. Not when you do the buccal swab it's the inside of the cheek; but this would be around the gum line. A swab of her back and shoulders, both breasts, and her right outer thigh and calf.
Q: Okay. Now, those seem pretty specified areas. Is there a particular reason you swabbed those areas as opposed to any other places?
A: Okay. Let me see. In the narrative she stated that she felt his penis against her right leg, and he hit me in the right arm and right leg with a paddle. She also stated that he had kissed her back, shoulders, and her breasts.
Q: Okay. And so is that why the swabs were taken from where they were?
A: Yes.
Q: Is that the reason why were there any swabs taken from say the vaginal area?
A: No. She denied that there had been any vaginal contact.
Q: Okay. But at the time she did state that there had been mouth on the breast?
A: Yes.
(Transcript of Proceedings, 5/24/22, pg. 82-83).

Despite stating that the sexual behavior of the Defendant occurred only between 2008 and 2017, when asked if Bruce ever put his mouth on any part of her body the victim testified "[j]ust up on my breast. He put his place - his mouth up there. And I didn't like it. That's when my dad took me down to the hospital; and they found that DNA on me, on my breast and everywhere." (T.P. 5/24/22, pg. 40). This testimony shows that the victim made accusations of sexual behavior on the part of the Defendant in

2018. It is the job of the jury to resolve any inconsistencies in testimony. However, the victim's testimony, along with the corroborating testimony of Trooper Miller and Nancy Steil, provided a sufficient foundation to establish an adequate basis in fact to permit the testimony of the expert witness and admission of exhibits regarding DNA and serology.

Tr. Ct. Op., 1/24/23, 4-5.

We agree with the trial court that despite the victim's testimony that the "sex things" stopped occurring in 2017, T.P., 5/24/22, at 49-50, there was an adequate factual basis for admitting the reports and the testimony. While it is was clear from the testimony that no penetration was alleged in 2018, T.P. at 87, sexual assault takes forms other than penetration. Additionally, the victim's 2018 allegation that Appellant hit her with a paddle and that Appellant's mouth was on her breast, T.P. at 40, Trooper Miller's testimony that he deemed a sexual assault kit and SANE examination necessary after the victim's July 2018 incident report, T.P. at 126, Gordon Calvert's testimony that the 2018 swabs of the victim revealed saliva on her body, T.P. at 96, and Angela Schultheis's testimony that the saliva found on the victim contained Appellant's DNA, N.T. at 113-14, all support the experts' bases for the testimony. Thus, we find no abuse of discretion by the trial court.

Appellant's second issue is that the trial court erred in permitting the Commonwealth to play a video recorded interview between Trooper Miller and Appellant. Appellant's Br. at 16. Specifically, Appellant argues that that the recorded interview was not relevant because it depicts Appellant at the state police waiting for his attorney which is not a fact of consequence, and that the

recording was prejudicial because Appellant's request for his attorney to be present has a "negative connotation." Appellant's Br. at 17-18. We disagree.

Relevant evidence is admissible unless "otherwise provided by law." **Commonwealth v. Cook**, 952 A.2d 594, 612 (Pa. 2008) (quoting Pa.R.E. 402). Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence [and] the fact is of consequence in determining the action." Pa.R.E. 401. Further, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Additionally, a videotaped interrogation of a criminal defendant may be introduced as substantive evidence at that defendant's trial. **See Commonwealth v. Marrero**, 687 A.2d 1102 (Pa. 1996); **Commonwealth v. Probst**, 580 A.2d 832 (Pa. Super. 1990). Voluntary extrajudicial statements made by Appellant may be used against him even though they contain no admission of guilt. **Commonwealth v. Simmons**, 662 A.2d 621 (Pa. 1995). "The extrajudicial statements, which differ from confession in that they do not acknowledge all essential elements of a crime, are generally considered to qualify for introduction into evidence[.]" **Id.** at 635.

Here, while it is true that Appellant mentioned speaking to his attorney several times in the recorded interview, the references to his attorney are brief and not inflammatory. **See Commonwealth v. Kitchen**, 730 A.2d 513,

520-21 (Pa. Super. 1999) (stating that where a videotaped police interrogation played at trial referenced that the defendant was in police custody, would be arrested for murder, and that there were witnesses against her connecting her to the crime, the statements were not prejudicial and not inflammatory). In *Kitchen*, this Court decided which parts of a recorded interview played at a trial were admissible and which should have been excluded as prejudicial. The two taped interviews in that case showed the defendant telling the police her version of events and the police telling her that she would be arrested for murder based on evidence from other witnesses. *Id.* at 520. The police also interrogated her with phrases such as, "we know you're lying," and asking if she was lying when she answered a specific question. *Id.* at 521-522. The trial court allowed the part of the recording showing defendant's version of events to be admitted, but redacted any mention of her arrest for murder, that she was in police custody, that there were witnesses against her, that she may have been lying, accusations of untruthfulness, and questions to which she responded with silence. *Id*. On appeal, we agreed that the parts of the video showing officers' direct accusations of lying were properly excluded because they could be analogized to a prosecutor's personal opinion of guilt of a criminal defendant. *Id.* at 521. We also agreed that the portions of the video where the defendant remained silent to an officer's question were properly redacted since reference at trial to the accused's silence while in police custody is a violation of constitutional rights. *Id.* at 522. However, we also held that the trial court should not have

redacted as prejudicial mentions that the defendant was in police custody, that she would be arrested for murder, that there were witnesses against her connecting her to the crime, or inquiries about the defendant's truthfulness if worded in the form of a question as opposed to an accusation. *Id*.

Here, the recording shows Appellant at the police station giving his version of events, speculating about the accusations against him, and explaining his relationship with the victim. These portions are relevant because Appellant's discussion of the events surrounding his case has a tendency to make those facts more or less probable. Appellant's mentions to police about speaking with his attorney are brief and not prejudicial because they can be distinguished from cases where a prosecutor's suggestion that a defendant is guilty for retaining counsel results in penalizing the defendant for exercising a constitutional right. This court has recognized that many "federal and state courts have concluded that prosecutors may not suggest that a defendant's retention of counsel is inconsistent with his or her innocence." *Commonwealth v. Lang*, 275 A.3d 1072, 1082 (Pa. Super. 2022) (citation omitted).

In *Lang*, the prosecutor admitted into evidence the defendant's internet search history from before he was even accused of a crime—but after a report was published leading the defendant to believe he may be accused of sexual misconduct—in which he looked up criminal defense attorneys. *Id.* at 1081. The trial court relied on the internet search for a defense attorney as dispositive evidence of the defendant's guilt. *Id.* at 1079. We held that

regardless of if the evidence shows a defendant was searching for an attorney or actually spoke with or consulted an attorney, that evidence cannot be used by the prosecutor to imply guilt. *Id.* at 1081. We also found that the error was not harmless since the evidence of the defendant's search for an attorney was "dispositive" in the court reaching its guilty verdict. *Id.* at 1084-85. Here, unlike in *Lang*, the brief mentions by defendant about his attorney were not elicited by the prosecutor, nor used as evidence of guilt or consciousness of guilt by the prosecutor. Also unlike in *Lang* where the defendant's search for a defense attorney was "the determining factor that resolved the relevant legal issue before the court," in the instant case there was other sufficient testimony and forensic evidence on which the jury based its decision. *Id.* at 1085. Therefore, the trial court did not abuse its discretion by allowing the police interview of Appellant to be played for the jury.

Appellant's third issue is that the trial court erred in permitting the Commonwealth to play a conversation between Appellant and his wife recorded on a Lycoming County Prison phone line. Appellant's Br. at 18. Specifically, Appellant contends that although the recording clearly states that the phone call was being taped, because the conversation was between a husband and a wife, it should have been excluded under the spousal privilege rule. Appellant's Br. at 13.

> We recognize that "[c]ommunications between spouses are presumed to be confidential, and the party opposing application of the rule disqualifying such testimony bears the burden of overcoming this presumption." *Commonwealth v. McBurrows*, 2001 PA Super 164, 779 A.2d 509, 514 (Pa.Super. 2001) (internal

- 10 -

citation omitted). The privilege under 42 Pa.C.S.A. § 5914 prevents a spouse from testifying against the declarant-defendant spouse regarding "any communications which were confidential when made and which were made during the marital relationship." *Commonwealth v. May*, 540 Pa. 237, 656 A.2d 1335, 1341-1342 (1995) (footnote omitted) (emphasis supplied). Our Supreme Court has explained that where the challenged spousal communication was divulged by the declarant-defendant to third parties, the statement "does not qualify as [a] confidential communication." *Commonwealth v. Hancharik*, 534 Pa. 435, 633 A.2d 1074, 1077 (1993). Further, our Supreme Court explained that "[t]he Court in *May* recognized that the question of what is a 'confidential' communication turns in part on the reasonable expectation the declarant has that the communication will remain confidential." *Commonwealth v. Spetzer*, 572 Pa. 17, 813 A.2d 707, 722 (2002).

*Commonwealth v. Davis*, 121 A.3d 551, 556-57 (Pa. Super. 2015) (emphasis removed).

First, it is worth noting that neither Appellant nor his spouse testified against one another in this case, which is what the privilege under section 5914 seeks to prevent. Here, the Commonwealth played a conversation between Appellant and his wife that was recorded on prison phone lines which instruct the phone call participants that the line is being recorded. Thus, the parties to the phone call on the recorded prison line never had a reasonable expectation that the communication would remain confidential since the parties were aware that the communications were contemporaneously being divulged to a third party. Therefore, since the conversation which was recorded and played at trial was never confidential, the privilege cannot apply, and we find no abuse of discretion by the trial court.

Judgment of Sentence Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/19/2023