J-A06009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRY LIPINSKI | : | |
| | : | |
| Appellant | : | No. 678 WDA 2020 |

Appeal from the PCRA Order Entered May 12, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008958-2013

BEFORE: BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: June 23, 2021**

Appellant, Terry Lipinski, appeals from the post-conviction court's May 12, 2020 order, dismissing as meritless his timely petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

The PCRA court summarized the background of this matter as follows:

On September 11, 2014, [Appellant] was convicted by a jury of three … counts each of: Rape, 18 Pa.C.S.[] § 3121(a)(1); Involuntary Deviate Sexual Intercourse (IDSI), 18 Pa.C.S.[] § 3123(a)(7); Statutory Sexual Assault, 18 Pa.C.S.[] § 3122.1(b); Incest of a Minor, 18 Pa.C.S.[] § 4302(b); Sexual Assault, 18 Pa.C.S.[] § 3124.1; Indecent Assault, 18 Pa.C.S.[] § 3126(a)(8); and one … count each of: Unlawful Contact, 18 Pa.C.S.[] § 6318; Aggravated Indecent Assault, 18 Pa.C.S.[] § 3125(a)(8); Endangering the Welfare [o]f Children, 18 Pa.C.S.[] § 4304(a); Corruption of Minors, 18 Pa.C.S.[] § []6301[(]a)(1)(ii); and Terroristic Threats, 18 Pa.C.S.[] § 2706(a)(1).

After conviction[,] the Commonwealth filed [its] intent to seek … mandatory [minimum sentences] pursuant to 42 Pa[.]C.S.[] § 9718. The trial [j]udge, the Honorable Donna Jo McDaniel[,] imposed an aggregate sentence of 40-80 years of incarceration: 10-20 years at each count of Rape, and 10-20 years at the count

of IDSI, all to … run consecutively; and, an additional 10-20 year sentence at the remaining two … counts of IDSI, running concurrently.  On January 22, 2018, Appellant filed a direct appeal to [the] Superior Court challenging the legality of the mandatory sentence under [Section] 9718.  [The] Superior Court vacated the sentence and remanded for … resentencing.  [***Commonwealth v. Lipinski***, 183 A.3d 1079 (Pa. Super. 2018) (unpublished memorandum).]  On May 3, 2018, Judge McDaniel resentenced [Appellant] to 9-18 years of incarceration at the same counts, and in the same fashion, for an aggregate sentence of 36-72 years['  imprisonment].  [Appellant] did not file any post-sentence motions or appeal.  On February 4, 2019, [Appellant] filed a *pro se* PCRA Petition and[,] on March 7, 2019, Suzanne Swan, Esq.[,] was appointed as counsel.  After a request for an extension, an Amended PCRA Petition was filed on September 5, 2019, followed by the Commonwealth's Answer of November 4, 2019.

PCRA Court Opinion (PCO), 3/16/20, at 1-2.

On March 16, 2020, the PCRA court issued a notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907.  Appellant did not respond.  Thereafter, the court entered an order denying his petition on May 12, 2020.  On June 24, 2020, Appellant filed a petition for reinstatement of his right to appeal *nunc pro tunc*, which the court granted.  He subsequently filed a notice of appeal on July 2, 2020.  The court instructed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and he timely complied.  The court then supplied a statement in lieu of an opinion pursuant to Rule 1925(a)(1), explaining that it had already set forth the reasons for its ruling in its earlier Rule 907 notice of its intent to dismiss Appellant's petition.

Presently, Appellant raises two issues for our review:

I. Did the lower court abuse its discretion in dismissing the PCRA petition without a hearing where [Appellant] established the merits of the claim that counsel was ineffective for failing to object

- 2 -

to and make an oral motion *in limine* to preclude the expert testimony of a physician where the Commonwealth failed to disclose that the physician would be testifying as an expert and failed to disclose her expert opinion prior to trial, resulting in a discovery violation and prejudice to [Appellant]?

II. Did the lower court abuse its discretion in dismissing the PCRA petition without a hearing where [Appellant] established the merits of the claim that counsel was ineffective for failing to object to the expert testimony of a physician on the grounds that it was irrelevant and prejudicial to [Appellant]?

Appellant's Brief at 5 (unnecessary capitalization omitted).

At the outset, we recognize that,

in reviewing the propriety of an order granting or denying PCRA relief, we are limited to determining whether the evidence of record supports the determination of the PCRA court, and whether the ruling is free of legal error. Great deference is granted to the findings of the post-conviction court, and these findings will not be disturbed unless they have no support in the certified record.

***Commonwealth v. Payne***, 794 A.2d 902, 905 (Pa. Super. 2002) (internal citations omitted). We also observe that:

The right to an evidentiary hearing on a post-conviction petition is not absolute. A PCRA court may decline to hold a hearing if the petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence. A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and denying relief without an evidentiary hearing.

***Id.*** at 906 (citation omitted). Further,

[i]n order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.[] § 9543(a)(2)(ii). This requires the petitioner demonstrate that: (1) the underlying claim is of arguable merit;

- 3 -

(2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. It is presumed that counsel is effective, and [we] place upon the appellant the burden of proving otherwise. Counsel cannot be deemed ineffective for failing to pursue a meritless claim.

*Id.* at 905-06 (most internal citations and quotation marks omitted).

In Appellant's first issue, he argues that "counsel was ineffective for failing to object to and make an oral motion *in limine* to preclude the expert testimony of a physician[, Jennifer Wolford, M.D.,] where the Commonwealth failed to disclose that [Dr. Wolford] would be testifying as an expert and failed to disclose her expert opinion prior to trial, resulting in a discovery violation and prejudice to [Appellant]." Appellant's Brief at 10 (unnecessary capitalization and emphasis omitted). Appellant claims that Rule of Criminal Procedure 573 requires the Commonwealth to inform the defense before trial of any expert opinions to be offered at trial, and the results or reports of any scientific test performed by an expert. *See id.* at 11. Specifically, Rule 573 sets forth, in relevant part, that:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

…

(e) any results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant

- 4 -

> that are within the possession or control of the attorney for the Commonwealth;
>
> …
>
> (2) *Discretionary With the Court.*
>
> …
>
> (b) If an expert whom the attorney for the Commonwealth intends to call in any proceeding has not prepared a report of examination or tests, the court, upon motion, may order that the expert prepare, and that the attorney for the Commonwealth disclose, a report stating the subject matter on which the expert is expected to testify; the substance of the facts to which the expert is expected to testify; and a summary of the expert's opinions and the grounds for each opinion.

Pa.R.Crim.P. 573.

Appellant complains that "the Commonwealth failed to disclose, through pretrial discovery, the nature and content of Dr. Wolford's expert testimony." Appellant's Brief at 13. He explains:

> Dr. Wolford was the attending physician at the Division of Child Advocacy at Children's Hospital of Pittsburgh. The parties stipulated that she is an expert in the field of medicine with a specialty of child abuse. Dr. Wolford did not treat the alleged victim…. Rather[,] she testified that she reviewed the medical records of the hospital emergency room regarding the history, examination, diagnoses[,] and treatment of the alleged victim. Dr. Wolford was permitted to testify as to the contents of the report prepared by another physician. She noted that the exam did not support a diagnosis of child sexual abuse. Most significantly, Dr. Wolford then testified that a normal physical exam, as in the instant case, "is actually more common in child physical abuse and sexual abuse. We say it is normal to be normal." She then related the reasons why 90 to 95 percent of exams of alleged victims of sexual abuse are normal.
>
> The testimony of Dr. Wolford … ambushed defense counsel at trial on a critical aspect of the Commonwealth's case. Defense counsel had no notice that the Commonwealth would seek to use Dr.

- 5 -

Wolford as an expert. A denial of due process indeed occurred here, as well as a denial of the right to counsel. Rather than promote the fairness and integrity of the trial as a truth-seeking process, the Commonwealth undermined it. The Commonwealth prevented defense counsel from being prepared to cross-examine D[r]. Wolford as to whether her qualifications were those that should be expected of someone who is "expert" in the specialized field of child sexual abuse. The Commonwealth further prevented defense counsel from arming himself with the tools he needed to challenge the [d]octor's opinion. Specifically, he was forced to cross-examine her through questions to which he did not know the answers, and failed to question her as to the research and studies upon which she based her opinion. For example, counsel did not explore whether or how it was determined for certain (other than through the victims' allegations) that the 90 to 95 percent of alleged sexual abuse victims who had normal physical exams[] were[,] in fact[,] abused. Furthermore, counsel did not inquire as to how long it takes to heal, and whether tissue tearing would likely be observed when examining someone who claimed to have been anally raped several times within one month of the examination.

In addition, the Commonwealth precluded defense counsel from making an informed tactical decision pretrial on the critical question of whether the services of a defense expert were necessary at trial in order to meet the Commonwealth's evidence. Without sufficient time to obtain his own expert, defense counsel was denied the opportunity to challenge the validity of the statistics referred to by D[r.] Wolford. In the interest of gaining an advantage at trial, the Commonwealth left the defense stranded in the courtroom.

*Id.* at 14-16 (internal citations omitted).

Appellant observes that Subsection E of Rule 573 provides relief in the event of a party's lack of compliance with its requirements. *Id.* at 18. Rule 573(E) states:

**(E) Remedy.** If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than

testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E). Appellant therefore asserts that "[i]f counsel had objected to or made an oral motion *in limine*, requesting that the court preclude Dr. Wolford's testimony, absent an abuse of discretion, the court properly would have prohibited Dr. Wolford from testifying pursuant to Rule 573(E)[,]" and he further contends that, "[a]t a minimum, counsel should have requested a continuance, which the court properly would have granted." Appellant's Brief at 18-19 (citations omitted).

In denying this claim, the PCRA court determined that the record did not support Appellant's assertion that his trial counsel was unaware of the nature of Dr. Wolford's testimony. It reasoned:

Although [Appellant] did not attach the docket in support of the position that the Commonwealth failed to comply with [Rule] 573, by the [c]ourt's own review of the record, it is evident that the Commonwealth did not file a Notice of Expert Witness. However, that is not dispositive of [Appellant's] argument. After a thorough review of the record, including the trial transcript, it is apparent that trial counsel was otherwise aware of this expert witness. First, defense counsel never raised a discovery violation with the [c]ourt, and second, the trial transcript is devoid of anything demonstrating that defense counsel was unaware of Dr. Wolford and the purpose of her testimony. On September 9, 2014, the first day of trial, an on-the-record discussion took place between the prosecutor and the [c]ourt related to witness availability and order. It was during this conversation that the Commonwealth mentioned that Dr. Wolford was present, and provided a proffer of her testimony: that she did not physically examine the minor victim and would be testifying as an expert on rape trauma. [N.T., 9/9/14, at 94-95.] Although present, trial counsel for [Appellant] did not respond in any manner. This silence does not demonstrate "trial by ambush," as asserted by [Appellant], but rather that trial counsel was in fact aware of this witness and the exact testimony she would provide. Third, Dr. Wolford was the fifth and last

witness called on the second day of trial, further undermining [Appellant's] allegation that trial counsel was caught off-guard. Fourth, trial counsel stipulated to Dr. Wolford's qualifications and the victim's medical records that the expert would be testifying about. Thus, [Appellant's] assertion that trial counsel was ill-prepared to cross examine Dr. Wolford's qualifications is completely without support, and belied by the record as no *voir dire* on qualifications was conducted. As trial counsel engaged in a lengthy and effective cross-examination of Dr. Wolford, and challenged not only her statistics but her underlying conclusions, the record demonstrates the preparedness of [Appellant's] counsel. [N.T., 9/10/14, at 290-300.]

[Appellant] does not cite to any portion of the trial transcript for the repeated accusation that trial counsel was "ambushed[,]" "sandbagged[,]" and "stranded" by a "last minute disclosure." [Appellant's] suggestion that additional questions *could have* been asked of the expert is not proof of ineffectiveness. As there is no support for the assertion in the record, the claim lacks merit, and counsel cannot be deemed ineffective for failing to raise a meritless claim. **Com[monwealth] v. Weiss**, 81 A.3d 767, 782 (Pa. 2013). As such, this [c]ourt finds that this issue is without merit, and therefore no hearing is required. **Commonwealth v. Maddrey**, 205 A.3d 323[, 328] (Pa. Super. 2019) (["]It is well settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exists, then a hearing is not necessary.["]).

PCO at 4-5 (footnotes omitted; emphasis in original).

We discern no error or abuse of discretion by the PCRA court. Our review of the record confirms that Appellant's trial counsel was not surprised by the Commonwealth's calling of Dr. Wolford to testify or by the content of her testimony, and we agree with the PCRA court that trial counsel effectively cross-examined Dr. Wolford on her opinions. As Appellant has not demonstrated that trial counsel was surprised or otherwise unaware of Dr. Wolford's testimony, trial counsel cannot be deemed ineffective for failing to

file a motion *in limine* or seek a continuance pursuant to Rule 573(E). Thus, no relief is due on this basis.

In Appellant's second issue, he argues that his trial counsel was ineffective for failing to object to Dr. Wolford's expert testimony on the grounds that it was irrelevant and prejudicial to him. *See* Appellant's Brief at 19. He states:

> At the time the Commonwealth put D[r.] Wolford on the stand, no evidence had been presented regarding the medical examination of the alleged victim when she went to the hospital emergency room to report the assault. Rather, the Commonwealth presented the results of the examination through Dr. Wolford, who did not conduct the exam[,] but read the report of the person who did conduct it. The jury was informed that the exam did not reveal any signs of sexual abuse. The results were "normal." After presenting this exculpatory evidence, the Commonwealth hastened to have Dr. Wolford explain that "normal is normal" in the majority of sexual assault cases. Trial counsel did not object to the admission of Dr. Wolford's testimony on any grounds.

> Arguably, testimony that an absence of physical symptoms does not disprove that the assaults occurred was admissible pursuant to 42 Pa.C.S. § 5920(b)(2).[1] However, it is [Appellant's] position

---

[1] **§ 5920. Expert testimony in certain criminal proceedings**

> **(a) Scope.** -- This section applies to all of the following:

> …

> (2) A criminal proceeding for an offense under 18 Pa.C.S. Ch. 31 (relating to sexual offenses).

> **(b) Qualifications and use of experts.**--

> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience

*(Footnote Continued Next Page)*

that Dr. Wolford's testimony was inadmissible because 1) it was irrelevant because the defense had not cross-examined the alleged victim about the results of the rape kit/medical exam, and 2) the expert's testimony was speculative and not probative of any matter at issue.

Here, when Dr. Wolford was called to testify, no evidence had been presented regarding the medical examination of the alleged victim.[2] There was no fact from which the jury may have improperly drawn a negative inference, that is, that the results of the exam were normal. [Appellant] is cognizant of the rationale for admitting expert testimony explaining the lack of evidence proving the crime that "[o]nce certain theories of a case are presented and some evidence is offered to support them, triers of fact, especially juries untrained in evidence law and the rules governing litigation, may expect to hear specific kinds of proof in further support of or in response to the offered evidence. If their expectations are not satisfied, triers of fact may penalize the party who disappoints them by drawing a negative inference against that party." However, this rationale does not apply where **no**

---

with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence, that will assist the trier of fact in understanding the dynamics of sexual violence, victim responses to sexual violence and the impact of sexual violence on victims during and after being assaulted.

(2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.

(3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

(4) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

42 Pa.C.S. § 5920.

[2] However, we note that, on the first day of trial, the victim testified that she went to the hospital after disclosing the abuse and "got a rape kit done…." N.T., 9/9/14, at 93. *See also id.* at 39-40 (the victim's mother testifying that the victim went to the hospital for a rape kit after telling her about the sexual assaults).

evidence is offered to support a theory of the case. Here, since the jury had not been informed that the exam was normal and did not indicate that the alleged victim had suffered any sexual abuse, evidence explaining the negative, inconclusive results was not relevant. Any concern that the jury might draw a negative inference from information that they were not given was purely speculative.

In **Commonwealth v Minerd**, … 753 A[.]2d 225 ([Pa.] 2000), the [c]ourt was faced with a similar situation to that presented here. The [c]ourt held that the Commonwealth was entitled to address this negative inference in its case-in-chief because the defense may choose not to introduce the results of the physical examination showing the lack of physical trauma, thereby depriving the Commonwealth of the opportunity to address the juror's potential negative inferences. However, the [c]ourt did not consider that there is a real possibility that a jury could be misled or confused when the Commonwealth presents exculpatory evidence, then presents an expert who testifies that she examined the exculpatory evidence, and that in most cases such evidence is meaningless. The jury was then free to impermissibly infer that the expert was of the opinion that the test results relative to the alleged victim in the instant case likewise were meaningless. The testimony thus acted to improperly invade[] the province of the jury by bolstering the credibility of the victim. "It is a basic tenet of our judicial system that issues of credibility are left solely to the jury for resolution…."

In addition, in the matter *sub judice*, the expert presented no testimony that would make a material fact "more or less probable." Dr. Wolford testified that the fact that the alleged victim's physical exam was normal was not uncommon. She stated that it "is actually much more common in child physical abuse and sexual abuse. We say it is normal to be normal." She opined that there were various reasons why that was the case, but only discussed two — that a woman's body is meant to stretch, and that tissue heals. She did not offer an opinion that a normal result could mean that no abuse occurred. She did not say whether one reason was more likely than the other. This speculative testimony could not have aided the jury in its task of determining whether sexual assaults did occur here. Therefore, the testimony was irrelevant.

In fact, the jury instructions were sufficient to ameliorate any concerns that the jury **might** notice that they were not given any

test results, and **might** penalize the Commonwealth for not presenting medical evidence by pondering some nebulous negative inference. The jury was instructed that "[t]he evidence which you are to consider in reaching your decision consists of the testimony of the witnesses which you have heard and the exhibits which you saw introduced." The jury also was charged that "[y]ou must not consider the victim's delay in making a complaint as conclusive evidence that the act did not occur." Finally, the court instructed the jury that "[t]he testimony of a victim standing alone, if believed by you, is sufficient proof upon which to find [Appellant] guilty in this case. The testimony of the victim such as this need not be supported by other evidence to sustain a conviction." It is well[-]settled that the jury is presumed to follow the trial court's instructions.

*Id.* at 21-25 (most internal citations omitted; some brackets added; emphasis in original). For these reasons, Appellant maintains that his trial counsel "could not have had a reasonable basis for failing to object to the admission of the testimony which impermissibly invaded the province of the jury to determine the alleged victim's credibility." *Id.* at 26. He insists that he "was prejudiced by counsel's omission insofar as the jury's verdict turned [on] whether or not it believed the alleged victim." *Id.*

No relief is due on this basis. Our Supreme Court, in *Minerd*, has already rejected the arguments made by Appellant. In that case, two sisters were sexually abused by their stepfather, but did not disclose the abuse until years later. *Minerd*, 753 A.2d at 227-28. At trial, the Commonwealth presented the testimony of a qualified expert in obstetrics and gynecology who stated that she examined the sisters and found no evidence of physical trauma to their genital or anal areas. *Id.* at 228. However, she explained that "the absence of physical trauma did not prove that the abuse had never

occurred[,]" and that "because of the nature of the muscle that closes the anus, there would have been an adequate time between when the abuse occurred and the examination for any damage that had been done to heal." *Id.* (citations omitted). On cross-examination, the expert "confirmed that she was not stating that the alleged acts did or did not occur, and agreed that … it could be that 'there was no trauma to the anus or genitals because the acts in fact did not occur[,]'" and stated that "'either way, there was no evidence of it.'" *Id.* (citations omitted). After the stepfather was convicted of various sexual offenses, he appealed, claiming that the expert's "testimony improperly bolstered the [sisters'] credibility; that its probative value is outweighed by its prejudicial value; that it was irrelevant; and that it may have unduly influenced the jury." *Id.* at 230. Our Supreme Court deemed each of these arguments unpersuasive.

Notably, the *Minerd* Court first rejected the stepfather's argument that the expert's testimony impermissibly bolstered the sisters' credibility as the expert "was neither asked for, nor did she express, any opinion as to whether the children were telling the truth about being sexually abused. Her testimony only explained the significance of the results of the physical examination. Moreover, [her] testimony regarding her physical findings was inconclusive as to whether any abuse had even occurred." *Id.* (citation omitted). Second, the Court determined that the expert's testimony was relevant and should not be limited to rebuttal, opining:

It is axiomatic that the Commonwealth has the burden of proving every element of the offense for which the defendant is charged beyond a reasonable doubt. The jurors, as factfinders, are entrusted with the responsibility of evaluating the evidence and rendering a decision based on the evidence presented and the inferences deduced therefrom. In this case, the defendant was charged with sexually abusing his stepchildren. Since the children alleged that the abuse occurred several years ago, there was no recent physical evidence. Given this passage of time, [the expert's] testimony was relevant to explain to the jurors the absence of physical trauma. Without such an explanation, jurors may improperly draw a negative inference against the Commonwealth, based upon a layperson's untutored assumptions, and rely upon that inference in rendering a verdict.

Limiting the admission of expert testimony to rebuttal is an imperfect procedure, as the defense may not introduce the examination results, thereby depriving the Commonwealth of the opportunity to counteract the jurors' negative inferences. Moreover, the admission of the evidence on direct will not confuse or prejudice the jury any more than if it is introduced on rebuttal, since in both cases, the defense will have the opportunity to cross-examine the expert. Hence, there is no need to limit this type of expert testimony only on rebuttal; it may be admitted in the Commonwealth's case-in-chief.

[The stepfather] also claims that the expert testimony is irrelevant because it is speculative. He asserts that since [the expert] rendered two opposing opinions, her testimony is speculative and thus does not help jurors, but rather confuses them and forces them to speculate. Initially, we note that [the expert] in fact rendered only one opinion, *viz.*, the examination results were inconclusive. Moreover, we recently addressed a similar issue in ***[Commonwealth v.] Hawk***, [709 A.2d 373 (Pa. 1998)], in which we determined that the trial court abused its discretion in precluding the defense from admitting testimony of a forensic scientist regarding the negative test results of a rape kit. We rejected the lower court's concern that the testimony was speculative, stating "[t]he inconclusiveness of the negative test results does not render the scientist's testimony inadmissible." [***Id.***] at 377. Because the expert could offer the jury potential theories to explain the negative test results, "her testimony would have assisted the jury in its interpretation of the physical evidence." ***Id.*** We noted that the Commonwealth was entitled to cross-examine the scientist to challenge the reliability of her

- 14 -

findings, and that the jury was free to evaluate the expert testimony and accept or reject some, none or all of the scientific evidence. *Id.* (citations omitted).

The expert testimony in the instant case is similar to that offered in *Hawk*. [The expert's] testimony offered the jury potential theories to explain the results of the physical examination of the children. [The stepfather's] counsel cross-examined the expert witness in order to explore the reliability of her findings, and in fact was able to elicit an explanation of the results that was helpful to the defense. The jury, upon hearing all of these theories, was able to accept or reject any part of the expert's testimony. Consequently, we find no merit to this claim.

*Id.* at 231-32 (most internal citations and footnote omitted).

In the case *sub judice*, Appellant does not effectively distinguish *Minerd* and fails to convince us that the rationale employed by our Supreme Court in that case does not apply here. Like the expert in *Minerd*, Dr. Wolford testified that the results of the victim's full physical examination were normal and not diagnostic of child sexual abuse. N.T., 9/10/14, at 287. Regarding the normal test results, she explained that "it is very normal to be normal, even after having documented intercourse." *Id.* at 288. Later, on cross-examination, she agreed with Appellant's trial counsel that, although the absence of injury does not mean that a sexual assault did not happen, it likewise does not necessarily mean that it did happen. *Id.* at 297. Our review of the transcript confirms that Dr. Wolford did not express any opinion on the victim's credibility.

In light of Dr. Wolford's testimony, we see no reason why our Supreme Court's reasoning in *Minerd* does not control here, and Appellant does not advance a sufficient argument convincing us otherwise. As the

Commonwealth notes, "[a]n alleged child sex assault victim was taken for a medical exam; the results of that exam, and testimony from medical experts interpreting those results, would seem to be relevant to the question of whether an assault actually occurred." Commonwealth's Brief at 11. It aptly adds that "[t]he case law, particularly **Minerd**…, supports this commonsense notion, and further explains that such evidence is not limited to rebuttal." ***Id.*** We agree. Further, Appellant's claim of prejudice fails, as Dr. Wolford did not impermissibly bolster the victim's credibility. Accordingly, Appellant's argument that Dr. Wolford's testimony was irrelevant and prejudicial is meritless, and his trial counsel cannot be deemed ineffective for failing to pursue a meritless claim. Thus, we affirm the PCRA court's order dismissing his petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/23/2021

- 16 -