J-S30042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMIAH LEE GLEASON | : | |
| | : | |
| Appellant | : | No. 102 MDA 2021 |

Appeal from the Judgment of Sentence Entered December 15, 2020
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0006226-2019

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                 **FILED: MARCH 18, 2022**

Jeremiah Lee Gleason appeals from the judgment of sentence imposed following a jury trial in which Gleason was convicted of rape of a child, attempted rape of a child, attempted involuntary deviate sexual intercourse, aggravated indecent assault of a child, indecent assault, and corruption of minors.[1] For these offenses, Gleason received twenty-seven to fifty-four years of incarceration, to be followed by three years of probation. On appeal, Gleason singularly contends that the court abused its discretion when it denied his challenge to the weight of the evidence as to four of his convictions. Recognizing the great latitude afforded to trial courts in making weight of the

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 3121(c); 18 Pa.C.S.A. § 901(a) (section defining criminal attempt)/18 Pa.C.S.A. § 3121(c); 18 Pa.C.S.A. § 901(a)/18 Pa.C.S.A. § 3123(b); 18 Pa.C.S.A. § 3125(a)(7); 18 Pa.C.S.A. § 3126(a)(7); and 18 Pa.C.S.A. § 6301(a)(1)(ii), respectively.

evidence determinations, we disagree that the court abused its discretion and affirm.

By way of background, the victim, who was nine at the time of trial, and Gleason are second cousins. Gleason lived with the victim and her family for at least two lengthy periods of time. The victim indicated that Gleason had abused her for several years. Throughout his presence at the victim's house, Gleason would be tasked with babysitting the victim by himself, inherently giving him access to the victim on many occasions.

In 2019, the victim confided in her mother that Gleason had sexually abused her the previous night while the mother was out of the house. Thereafter, the victim conveyed to the victim's father that Gleason had, *inter alia*, touched her genital area. Based on this information, the mother and father decided to immediately call the police and file a report.

Predicated on the advice of a police officer, the mother took the victim to the hospital for a sexual assault forensic exam. Other than finding some redness of her labia majora, no other injuries were documented from this exam. However, later at trial, experts on both sides would opine about it being normal for a child not to exhibit signs of injuries after a sexual assault. The exam revealed no seminal fluid, and no DNA was found matching Gleason's.

York County's Child Advocacy Center (CAC) conducted an interview with the victim, who was seven at the time, wherein mother and father were not allowed to attend. It was at this point that the victim disclosed she had been penetrated by Gleason. The contents of this interview were made part of the

record via a motion filed by the Commonwealth prior to trial, which was submitted to the court pursuant to 42 Pa.C.S.A. § 5985.1.

At this interview, as summarized by the trial court:

> The CAC interview was conducted by Ms. Roberti on April 16, 2019, of [the victim]. [The victim] told Ms. Roberti she was at the CAC because [Gleason] "basically touched my private parts." [The victim] stated after identifying the "front part" as her vagina that [Gleason] touched the "inner and the outside." [The victim] went on to state that it hurt a little when [Gleason] touched the "inner" and that [Gleason's] fingers touched her "inner." [The victim] identified [Gleason's] "front" as his "wiener." [The victim] also said [Gleason] took her "panties [and] pants off" when she was alone in the basement with him. [The victim] went on to say that her "front" touched [Gleason's] "front" and that it "hurt in the inside." [The victim] continued that [Gleason] would kiss her on the neck.

> [The victim] stated that [Gleason's] body would be very close to her body. [The victim's] clothes would "basically be on" while [Gleason] would keep on his clothes so he would not get in trouble. [Gleason's] "front" was out when he would unbutton his pants and it would "pop out" and then "try to make [the victim] get on it. Sometimes [Gleason] would make [the victim] go on it when [Gleason] would "lay down" and [the victim's] stomach would be facing down on top of [Gleason] as well as making [the victim] wrap her legs around [Gleason].

> [Gleason's] "front" also touched [the victim's] anus. [Gleason] tried to make his "front" go into her anus, in which [the victim] told [Gleason] "no way José" and that [Gleason] tried "the humping." [The victim] tried to push away [Gleason] when attempting to put his "front" in her anus but it "didn't work because [Gleason] was stronger than [the victim.]" [The victim] described when [Gleason] would put his "front" on her anus "it felt like I was going to have a child" and "something is poking it" and "feels disgusting." [The victim] stated multiple times that [Gleason's] "front" and "his fingers," specifically his pointer finger touched her anus. [The victim] spoke to [Gleason's] "front" touching her vagina, [Gleason's] front touching her buttocks,

- 3 -

[Gleason's] hands touching her "boobies" and squeezing her chest under her clothes and would "wiggle it in there."

Trial Court Opinion, 3/3/21, at 23-25 (citations to the record omitted).

Conversely, at trial, the victim specified that she had not been penetrated, only touched in her vaginal area by Gleason's hands. The victim said that Gleason's hands remained on the outside of that body part, but that it had happened multiple times. The victim testified that no other part of Gleason touched her body and that both her and Gleason's clothing remained on when the touching occurred. Gleason also told the victim not to tell her mother or father what had happened. Despite her testimony, the victim also stated that she could remember what had happened better when she first disclosed that she had been assaulted.

As a result of the penetrative discrepancy, the court issued the following jury instruction:

> You have heard the evidence that [the victim] made a statement on an earlier occasion that was inconsistent with her testimony in the courtroom, and that of course would be the CAC interview versus her statement from the witness stand. You may, if you choose, regard this evidence as proof of the truth of anything that the witness said in the earlier statement. You may also consider this evidence to help you judge the credibility and weight of the testimony given by the witness during the trial.
>
> The testimony of [the victim] standing alone, if believed by you, is sufficient proof upon which to find [Gleason] guilty in this case. The testimony of the victim in a case such as this need not be supported by other evidence in order to sustain a conviction. Thus, you may find [Gleason] guilty, if the testimony of [the victim] convinces you beyond a reasonable doubt that the [Gleason] is guilty.

N.T., 7/15/20, at 501.

Ultimately, a jury found Gleason guilty of the aforementioned offenses, and at sentencing, Gleason received, *inter alia,* an aggregate twenty-seven to fifty-four years of incarceration. Additionally, he was designated a sexually violent predator.

Following sentencing, Gleason filed a post-sentence motion, which was denied. Gleason then filed a timely notice of appeal. The relevant parties have complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925, and accordingly, the matter is ripe for review.

On appeal, Gleason's sole issue asks:

1. Did the court abuse its discretion in denying his challenge to the weight of the evidence regarding his rape of a child, attempted rape of a child, attempted involuntary deviate sexual intercourse, and aggravated assault of a child given that the victim affirmatively testified that there was no penetration at trial, and the victim's prior inconsistent statement was wholly uncorroborated and contradicted by other trial evidence?

Our well-settled standard of review for claims challenging that the verdict was against the weight of the evidence is as follows:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witness. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (citation omitted). Moreover, we note that a challenge to the weight of the evidence is "[o]ne of the least assailable reasons for granting or denying a new trial." *Thompson v. City of Philadelphia*, 493 A.2d 669, 671 (Pa. 1985).

The gravamen of Gleason's argument is that, because the Commonwealth impeached the victim's testimony at trial, wherein she stated there had been no penetration, with her statements made during the CAC interview, which indicated that there had been penetration, "the weight of the evidence was against these convictions [that statutorily required penetration]." Appellant's Brief, at 25. Gleason continues in support of his claim by stating that his convictions "hinged on [the victim's] credibility, as there was no physical evidence[,] and Gleason did not admit to any wrongdoing." *Id*. Gleason frames the victim's trial testimony as "an outright disavowal of a critical component of her prior allegations." *Id*., at 28. Moreover, Gleason asserts that no "other evidence corroborated the notion that penetration took place." *Id*., at 29-30 (supporting this statement with the fact that the sexual assault forensic examination yielded no physical evidence).

We agree with Gleason that his challenged offenses required penetration. *See, e.g.*, *Commonwealth v. Hawk*, 709 A.2d 373, 377 (Pa. 1998) ("Penetration, however slight, is therefore an essential element of rape."). We also agree that, at trial, the victim did not indicate that Gleason

had penetrated her. However, we do not conclude that the evidence was "so tenuous, vague and uncertain that the verdict shocks the conscience of the court[.]" ***Commonwealth v. Sullivan***, 820 A.2d 795, 806 (Pa. Super. 2003).

The lower court found that the victim's CAC interview constituted a "contemporaneous, verbatim recording of [the victim's] statements."[2] Trial Court Opinion, 3/3/21, at 27; ***see also Commonwealth v. Lively***, 610 A.2d 7, 10 (Pa. 1992) ("[A] prior inconsistent statement may be used as substantive evidence … [if it is] a statement that is a contemporaneous verbatim recording of the witness's statements."). The court then went on to conclude:

> The jury was free to believe all, part, or none of the evidence and to determine the credibility of [the victim,] both at trial and during the CAC interview. . . . [The victim] stated multiple times during her CAC interview that both penile and digital penetration occurred. The incident was reported to police on March 15, 2019, the CAC interview occurred on April 16, 2019, and [the victim] testified on July 13, 2020. [The victim] testified that it was easier for her to remember the details that occurred back when she first told others then when she was testifying that day in trial.

Trial Court Opinion, 3/3/21, at 28 (citation to the record omitted).

Although there are obvious discrepancies between the victim's CAC interview and the testimony she adduced at trial, Gleason has not demonstrated that the verdict rendered in this case shocks the conscience.

To start, Gleason has not presented any analogous authority

---

[2] While Gleason casts doubt on the veracity of the victim's statements during this interview, he does not contest whether they could have been admitted.

demonstrating the necessity for reversal in a situation such as this, i.e., one involving disparate victim statements between pre-trial and at trial, with the further caveat that the victim was under the age of ten. In addition, we emphasize that the jury was freely able to resolve issues of the victim's credibility in a way that it deemed appropriate. We also recognize the trial court's on-point jury instruction that sought to rectify, for jury determination, any ambiguity or contradictions in the victim's statements.

"In assessing the weight to be afforded a witness' testimony, it is important to consider the context within which the testimony relates." **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000). The victim stated at trial that she could more readily remember the details of the sexual assaults when she originally disclosed that they had happened, rather than over a year later at trial. Stated another way, the statement the victim made at the CAC interview was much closer in temporal proximity to the sexual assaults she experienced.

Expert testimony established that, following a sexual assault, many victims, especially those being children, do not experience any physical manifestation of trauma or injury. Further expert testimony provided a basis as to why a child might recant earlier statements. **See** N.T., 7/15/20, at 432 (indicating that, if a child feels any pressure associated with what might happen to the accused, he or she might repudiate something admitted to prior).

While Gleason suggests that: (1) CAC should have conducted a follow up interview with the victim; (2) Gleason was out of state for "large periods" of time during the timeframe the victim specified he had been abusing her; and (3) the father's testimony established that Gleason was never alone with the victim for extended periods of time, Appellant's Reply Brief, at 4-5, even accepting these facts as true and within the context of the victim's "conflict … as to whether penetration occurred," *id*., at 4, we cannot conclude that the verdict "causes Lady Justice to totter on her pedestal, or temporarily takes away the trial judge's breath or makes him almost fall from the bench." *Commonwealth v. Cruz*, 919 A.2d 279, 282 (Pa. Super. 1997).

We acknowledge the core element of Gleason's position, that the discrepancies between the victim's testimony at trial and her CAC interview are obvious. However, and more importantly, Gleason has not demonstrated that this conflict extends beyond a credibility determination, exclusively within the province of the jury, to the point of warranting a reversal of the trial court's weight of the evidence determination.[3] As such, we are constrained to find no abuse of discretion in the trial court's disposition and affirm Gleason's judgment of sentence.

---

[3] Gleason does not contest whether the victim's statements made throughout the CAC interview establish the necessary element of penetration.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2022